**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SEAN MCCLARY,                                    )
3900 Morton Dr.                                  )
Richmond, VA 23223                               )
                                                 )
    *Plaintiff,*                                  )
                                                 )
v.                                               )
                                                 )    Case No.:
EDWARD C. FROST,                                 )
Administrator General of the                     )
Government Services Agency,                       )
                                                 )    JURY TRIAL DEMANDED
    *Defendant.*                                  )
                                                 )
Serve:                                           )
GSA                                              )
800 F St. NW                                     )
Washington, DC 20405                             )
                                                 )
Executive Office for the United                  )
States Attorney                                  )
Civil Process Clerk                              )
601 D St. NW                                     )
Room 2242                                        )
Washington, DC 20530-0001                        )
                                                 )
United States Department of Justice              )
950 Pennsylvania Avenue NW                       )
Washington, DC 20530-0001                        )
_____         )

**COMPLAINT**

Comes now Plaintiff, Sean McClary (hereinafter "Plaintiff"), by and through undersigned

counsel with his complaint for compensatory damages and equitable relief against Defendant

Government Services Agency (hereinafter "GSA" or "Defendant") and states as follows:

**INTRODUCTION**

1

Plaintiff was first hired by the GSA on or about July 28, 2024, as a program analyst at the GS-9 pay scale level.  The position was a remote position, with team members scattered all over the country.  Plaintiff suffers from ADHD, which is a condition that affects his ability to focus and complete tasks.  Plaintiff specifically applied for a remote work position because it was far more conducive to his ADHD than a position in a loud or busy office in which he could be easily distracted.  Plaintiff was hired as a Schedule A employee (which is reserved for persons with disabilities), and also asked his supervisor for an accommodation related t his ADHD shortly after being hired, which they granted.  Thus, Plaintiff's managers were aware that he suffered from a disability.  During his tenure with GSA, Plaintiff was successful in his role and praised by his supervisors.

Shortly after the inauguration of Donald Trump in January of 2025, agency personnel were informed that the administration was going to be looking to greatly reduce or eliminate remote work arrangements.  In anticipation of a dramatic change to his work status, Plaintiff filed a formal request for a reasonable accommodation of remote work on February 5, 2025.  At that time, Plaintiff was principally worried about losing his remote work status.  The following day, February 6, 2025, Plaintiff submitted the medical documentation that supported his request for a reasonable accommodation.  In doing so, Plaintiff engaged in activity protected by the Rehabilitation Act, 29 U.S.C § 794 *et seq.* (hereinafter "RA").

On or about February 5, 2025, Plaintiff received an email from Melissa Lully (hereinafter "Ms. Lully") and Helena Robinson (hereinafter "Ms. Robinson") both of whom were Labor and Employee Relations Specialists, stating that the GSA was not going to be processing any requests for reasonable accommodations involving remote work, or seeking less than full-time work, until

"further guidance" was issued.  Thus, Defendant did not engage in any kind of interactive process with Plaintiff, which prompted Plaintiff to file an EEO complaint.

The Trump Administration instructed the GSA, as well as other agencies, to identify and target remote workers to be part of the mass termination event, regardless of their degree of productivity, or if the remote work arrangement was part of a reasonable accommodation.  In doing so, Defendant intentionally targeted persons with disabilities that relied on telework to mitigate their impairments.  On or about February 14, 2025, Plaintiff was terminated from his employment as part a mass termination event of probationary employees by the Trump Administration.  A few weeks later, he was reinstated by way of a restraining order that was placed on illegal terminations. But rather than being returned to work, Plaintiff was placed in a paid but not working administrative leave status.  He remained in that status until August of 2025, when he was again terminated by Defendant.

Plaintiff herein alleges that he was identified and selected for termination because of his need for a reasonable accommodation, because he filed an internal EEO complaint related to his need for an accommodation, and that other probationary employees who did not require a reasonable accommodation were spared and allowed to retain their employment.  Plaintiff also alleges that he was discriminated against by being subjected to a two-year probationary period because of his disability, as opposed to the one year period applicable to non-disabled employees. Finally, Plaintiff alleges that he was terminated for seeking a formal reasonable accommodation with his agency, in violation of the RA.  Plaintiff seeks an ORDER from this Court holding that Defendant's probationary period policy illegally discriminates against persons with disabilities. Plaintiff further seeks reinstatement to his previous position, as well as compensatory damages of

3

not less than $1,000,000.00, including costs, fees, interest, attorneys' fees, and any and all other remedies deemed appropriate by the Court.

## PARTIES

1. Plaintiff is an African American male who resides in the Commonwealth of Virginia.

2. Defendant is an agency of the United States, headquartered in the District of Columbia. It is currently under the direction of Administrator General, Edward C. Frost.

## JURISDICTION & VENUE

3. This Court enjoys jurisdiction over this matter because the claims herein are brought pursuant to the laws of the United States. Venue is proper in this Court because all acts and omissions relevant to this claim took place in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. On or about February 14, 2025, Plaintiff filed an internal EEO complaint alleging disability discrimination and failure to engage in the interactive process, which is well within the statutory timeframe.

5. On or about August 6, 2025, Plaintiff amended the EEO complaint to include his allegation of retaliation and disability discrimination related to his termination.[1]

6. Defendant accepted the formal charge filed by Plaintiff on or about August 28, 2025.

7. One hundred and eighty days after August 28, 2025 is February 21, 2026. Plaintiff's administrative remedies are fully exhausted.

---

[1] Plaintiff was originally terminated in February of 2025, but due to litigation filed by the AFGE in the Northern District of California was returned to work for a period of time. He was terminated a second time on or about August 4, 2025 and he filed the amendment to his EEO charge two days later.

**RELEVANT FACTS**

8.      Plaintiff holds a bachelor's degree from Virginia Commonwealth University in Interdisciplinary Studies, which was conferred in December of 2022.

9.      Prior to being employed by the GSA, Plaintiff worked as a contractor for Clearbridge Technology Group, which had a contract with the U.S. Department of Education.  He employed in that position for approximately two years.

10.     Plaintiff was hired by the GSA in July of 2024 as a GS-9 level program analyst.

11.     His duties included developing dynamic dashboards, automating financial data sets, working with computer applications to better automate workflow and analytical processes.

12.     Plaintiff was hired into a remote-work position, with his direct supervisor, Mr. Beck working remotely as well.

13.     Plaintiff was hired as a Schedule A employee (which is an employee identified as having a disability).  Plaintiff's supervisor and entire management team was aware of the fact that he was a Schedule A employee because such information is in his personnel records.

14.     To be a Schedule A employee, Plaintiff had to fill out an I-9 form, which identified his disability (ADHD).  The I-9 form requires a Schedule A letter (documentation) from a medical professional, which Plaintiff provided.

15.     Schedule A employees are subject to a two year probationary period, as opposed to a one year probationary period for employees without disabilities.

16.     Plaintiff's probationary period was scheduled to end on July 26, 2026.  Had Plaintiff not been a Schedule A employee, his probationary period would have ended in July of 2025.

17.     Shortly after being hired, Plaintiff asked Mr. Beck for a reasonable accommodation of not having to be on camera during online staff meetings because such created more confusion and

5

distraction for him.  Also, because of his ADHD, Plaintiff needs to frequently move around and/or stand up and pace, and this can be distracting to others.

18.    Mr. Beck agreed to the accommodation, and it was never a problem thereafter.

19.    For the duration of his employment, Plaintiff received positive feedback about his performance.[2]

20.    In early 2025, shortly after the Trump Administration came into power, Plaintiff was informed that the agency was no longer going to allow remote work and that employees would have to report to offices.  Initially, this was just a rumor.

21.    However, because Plaintiff was a Schedule A employee, and because remote work was a key aspect of how he managed his disability, Plaintiff took steps to formalize his need for remote work as a reasonable accommodation of his ADHD.

22.    Plaintiff's ADHD substantially impedes him in the major life activities of writing, reading, working on tables or graphs, focusing on conversations, retaining and remembering information and completing tasks.

23.    Plaintiff takes prescription medication to mitigate his ADHD symptoms.  But despite the medication, he needs to take frequent breaks, often has to get up and move around, and needs to have very meticulous notes and reminders of tasks.  It takes Plaintiff more time to complete some tasks than others, so being able to manage his own schedule without interruption is critical.

24.    On or about February 5, 2026, in order to address the fact that his teleworking arrangement was necessary for him to be able to work productively, Plaintiff filed a formal request for a

---

[2] Specifically, Plaintiff received his performance evaluation on or about February 13, 2025.  He was rated as a 4 out of 5, fully successful employee.

reasonable accommodation of his ADHD, and supported that request with medical documentation on or about February 6, 2025.

25.     Rather than engaging in an interactive process with Plaintiff, Ms. Lully and Ms. Robinson informed Plaintiff by email that the agency was not going to even consider requests for remote work as a reasonable accommodation until it received "further guidance," from the administration.

26.     On information and belief, Plaintiff's supervisor was informed that Plaintiff filed an EEO complaint.

27.     Plaintiff is aware of no executive order or internal process that supersedes an employer's statutory obligation to engage in an interactive process when an employee seeks a reasonable accommodation.

28.     On or about February 14, 2025, Plaintiff was terminated from his employment.  The reason given for his termination was poor performance, which was a categorical and defamatory lie. There is no evidence whatsoever that Plaintiff was a poor or underperforming employee.

29.     Plaintiff asserts that the reason given for his termination was pretext for a discriminatory purpose.

30.     Plaintiff asserts that he was selected for termination because of his disability, because of his need for reasonable accommodation, and because he engaged in protected activity

31.     Shortly after his termination similarly-situated probationary employees brought suit in the Norther District of California in *AFGE et al. v. United States Office of Personnel Management, et al.,* Case No. 3:25-CV-01780 (WHA) (hereinafter "AFGE I").

32.     On or about March 13, 2025, Judge William Allsup of the Northern District of California issued a temporary restraining order forcing the agencies to return to work the probationary

7

employees who were terminated because of the union and association plaintiffs in AFGE I showed a substantial likelihood of success in proving that the terminations were illegal.

33.    Plaintiff fully references and incorporates all ORDERS and factual and legal findings of Judge Allsup in AFGE I as if fully restated herein.

34.    Rather than fully returning Plaintiff to work, Plaintiff was returned to an paid administrative leave status in which he received a paycheck but was not allowed to do any work.

35.    Plaintiff was treated disparately to his non-disabled colleagues, who were returned to full duties, and continue to be employed today, including Zach Montgomery and Alyssa Brooks, who were similarly situated to Plaintiff.

36.    Those who were returned to full duties were persons who did not have disabilities.

37.    On or about July 26, 2025, Plaintiff passed his one-year anniversary in this position at GSA.  Had he not been disabled, he would have no longer been a probationary employee at that time, and would have benefited the job protections available to non-probationary government workers

38.    Defendants in AFGE I appealed the issuance of the TRO to the Ninth Circuit Court of Appeals, but did not prevail.

39.    Defendants then appealed to the Supreme Court, which lifted the stay/return to work order issued by Judge Allsup, and allowed the agencies to re-terminate the probationary employees who were first terminated in February of 2025.  That order was issued in July of 2025.

40.    On or about August 4, 2025, Plaintiff was again terminated, and again, the reason provided was poor performance.  Again, this assertion was patently and facially false, and establishes that Defendant harbored animus against Plaintiff.

41.     On or about August 6, 2025, Plaintiff amended his EEO complaint to include allegations of retaliatory termination and disparate treatment due to disability and need for a reasonable accommodation.

42.     Because Plaintiff was in a two-year probationary period instead of a one year probationary period, he was terminated a second time.

43.     Plaintiff asserts that Defendant's probationary period policies discriminated against him because of his disability.

44.     There is no legitimate business reason for subjecting persons with disabilities to a longer period without employment protections than persons who are not disabled.

45.     There is not reliable evidence that persons with disabilities are less reliable, and thus need a longer period to prove their worth, than those without disabilities.

46.     Plaintiff was specifically and personally harmed by Defendant's discriminatory policy to treat persons with disabilities disparately to those who are not disabled.

47.     Even though the injunction in AFGE I was lifted by the SCOTUS, the case continued to be litigated on the merits.

48.     On or about September 12, 2025, Judge Allsup issued a decision on cross motions for summary judgment after a hearing on the merits, holding that the mass termination of probationary employees was unlawful.  Plaintiff references, incorporates and attaches that decision hereto as EXHIBIT 1.[3]

49.     Judge Allsup's decision and order stopped short of ordering the mass reinstatement of persons who were fired.  Plaintiff has filed suit to be reinstated to his job in separate litigation in this Court.

---

[3] Defendants have appealed the decision by Judge Allsup to the Ninth Circuit Court of Appeals.

50. Because Judge Allsup is a final decision on the merits, it decision that Plaintiff's termination was illegal is *res judicata* (issue preclusion) and establishes that Plaintiff was not terminated due to any performance deficiency or any other legitimate business reason. *See* EX 1, pp. 36-38.

51. On or about February 21, 2026, Plaintiff's 180-day statutory period expired.

52. Plaintiff herein alleges that not only was his termination illegal as determined by Judge Allsup, but that he was selected for termination and vulnerable to termination because of his disability, which also violates applicable law.

53. Since his termination from GSA, Plaintiff has struggled to find employment and remains unemployed.

54. The loss of Plaintiff's steady income and medical insurance has harmed him and his family, and caused him severe mental and emotional distress.

## CLAIMS

### COUNT I
*(Violation of the Rehabilitation Act, 29 U.S.C. § 794 et seq.*
*Failure to Accommodate)*

55. Plaintiff references and incorporates all allegations in the previous paragraphs as if fully restated herein.

56. Plaintiff is a qualified person with a disability, who was fully able to execute his duties with the reasonable accommodations he received and sought.

57. Plaintiff sought a reasonable accommodation of his disability on or about February 5, 2025, and submitted supporting documentation on February 6, 2025.

58. On or about February 5, 2025, Defendant responded to Plaintiff that it was not going to entertain his request for a reasonable accommodation because it was awaiting "further guidance" from the administration.

59. Defendant's obligation to engage in an interactive process with Plaintiff is statutory, and is not subject to "guidance" from any particular political entity or administration.

60. Defendant failed to initiate any kind of interactive process with Plaintiff, and therefore violated the RA.

61. As a direct and proximate cause of Defendant's actions, Plaintiff suffered severe mental and emotional damage.

62. Plaintiff herein demands an ORDER returning him to his job, as well as compensatory damages of not less than $1,000,000.00, plus interest, fees, costs, attorney's fees, back pay and any other remedies deemed appropriate by this Court.

**COUNT II**
*(Violation of the Rehabilitation Act, 29 U.S.C. § 794 et seq.*
*Retaliation)*

63. Plaintiff references and incorporates all allegations in the previous paragraphs as if fully restated herein.

64. Plaintiff is a qualified person with a disability, who was fully able to execute his duties with the reasonable accommodations he received and sought.

65. Plaintiff sought a reasonable accommodation of his disability on or about February 5, 2025, and submitted supporting documentation on February 6, 2025.

66. In doing so, Plaintiff engaged in activity protected by the RA.

67. Plaintiff's supervisor was aware that Plaintiff is a Schedule A employee with a disability.

68. Plaintiff's supervisor was aware that Plaintiff needed a reasonable accommodation.

69.    On information and belief, Plaintiff's supervisor was informed that Plaintiff filed an internal EEO complaint.

70.    Approximately one week later, Plaintiff was identified and selected for termination.

71.    Similarly situated probationary employees who did not require a reasonable accommodation were not terminated, as asserted herein.

72.    When Plaintiff was returned to work via the TRO of the Norther District of California, Defendant retaliated against him by not returning him to full duty, but rather placing him in a paid administrative leave status that foreclosed any opportunity to impress leadership or get back to executing meaningful work.

73.    Although Defendant had the option of keeping him on or rehiring him as a contractor as other agencies did, it opted not to because he is a person with a disability who required a reasonable accommodation.

74.    As a direct and proximate cause of Defendant's actions, Plaintiff suffered severe mental and emotional damage.

75.    He therefore seeks an award of compensatory damages of not less than $250,000.00, including costs, fees, attorney's fees, back pay, front pay and all other remedies deemed appropriate by the Court.

76.    Plaintiff herein demands an ORDER returning him to his job, as well as compensatory damages of not less than $1,000,000.00, plus interest, fees, costs, attorney's fees, back pay and any other remedies deemed appropriate by this Court.

## COUNT III

*(Violation of the Rehabilitation Act, 29 U.S.C. § 794 et seq.*
*Disparate Treatment)*

77.    Plaintiff references and incorporates all allegations in the previous paragraphs as if fully restated herein.

78.    Plaintiff is a qualified person who suffers from a disability, who is fully able to carry out his duties with a reasonable accommodation.

79.    Plaintiff was hired under as a Schedule A employee, which is a status that applies only to persons with documented disabilities.

80.    Schedule A employees are subjected to a two year probationary period, instead of a one year probationary period for all other employees.

81.    During the probationary period, employees have far weaker work protections and do not have the benefit of MSPB review of personnel actions against them (with few limited exceptions).

82.    Plaintiff was selected for termination in February of 2025 because he was still in a probationary status.

83.    Plaintiff was terminated a second time in July of 2025, also because he was still a probationary employee.

84.    Had Plaintiff not been a Schedule A employee, he would have been past his probationary period in July of 2025, and would have had job protections at that time.

85.    The only reason Plaintiff was still a probationary employee in July of 2025 is because he suffers from a disability.

86.    There is no rational business reason for persons with disabilities to be subject to longer probationary periods than persons who do not suffer disabilities other than some misguided notion that persons with disabilities are inherently less reliable than their non-disabled colleagues.

87.    Plaintiff alleges that any belief that persons with disabilities are inherently less reliable than their non-disabled colleagues is irrational, discriminatory, and without basis in fact or evidence.

13

88.     Defendant's probationary employee policies are discriminatory on their face, and as such, violate the RA.

89.     Defendant's probationary employee policies are not based in any legitimate business reason business reason or necessity.

## COUNT IV

*(Violation of the Fourteenth Amendment to the Constitution*
*--Equal Protection Clause)*

90.     Plaintiff references and incorporates all allegations in the previous paragraphs as if fully restated herein.

91.     Plaintiff is a qualified person who suffers from a disability, who is fully able to carry out his duties with a reasonable accommodation.

92.     In July of 2025, Plaintiff was terminated from his employment because he was a probationary employee.

93.     The only reason Plaintiff was still a probationary employee in July of 2025 is because he suffers from a disability and his employer's policies required that persons with disabilities not enjoy the job protections of regular employees until they serve two years in a probationary status.

94.     Defendant's probationary period policies intentionally discriminate against, and treat persons with disabilities more harshly than their non-disabled colleagues.  Thus, persons with disabilities do not enjoy equal protection of the laws.

95.     Defendant's policy against disabled workers does not survive strict scrutiny review because there is no rational, non-discriminatory reason for it whatsoever.

96.     As a direct and proximate cause of Defendant's discriminatory policies, Plaintiff was subjected to termination, and otherwise would not be had he not been a probationary status in July of 2025.

97.     Plaintiff herein demands an ORDER returning him to his job, as well as compensatory damages of not less than $1,000,000.00, plus interest, fees, costs, attorney's fees, back pay and any other remedies deemed appropriate by this Court.

## **JURY TRIAL DEMAND**

98.     Plaintiff demands trial by jury on all claims so triable.


Respectfully submitted,

/s/Pamela M. Keith
Pamela M. Keith [448421]
Kelli Slater [90009485]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com
kslater@centerforemploymentjustice.com
*Counsel for Plaintiff*